# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

| | |
|---|---|
| **DANIEL ALEXANDER MOLLETT,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 2:13-28018 |
| **CAROLYN W. COLVIN ,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order entered December 1, 2013 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case is presently pending before the Court on the parties cross-Motions for Judgment on the Pleadings (Document Nos. 10and 13.) and Plaintiff's Response. (Document No. 14.) .

Claimant received SSI benefits based on disability as a child. (Tr. at 20.) Upon turning eighteen years of age, and on March 24, 2011, it was determined that Claimant no longer was disabled as of March 1, 2011. (Tr. at 20, 72, 103-05, 106-09.) This determination was upheld on reconsideration after a disability hearing by a State agency Disability Hearing Officer. (Tr. at 20, 123-34, 135-37.) Claimant filed a written request for hearing on September 15, 2011. (Tr. at 20, 138-41.) A hearing was held on June 28, 2012, before the Honorable Jon K. Johnson. (Tr. at 38-66.)  By decision dated July 13, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 20-30.) The ALJ's

decision became the final decision of the Commissioner on September 10, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on November 5, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he attained age 18 on October 7, 2010, and was eligible for SSI benefits as a child for the month preceding the month in which he attained age 18. (Tr. at 22, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "borderline intellectual functioning and depressive disorder, NOS," which were severe impairments. (Tr. at 22, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 3.) The ALJ then found that since March 1, 2011, Claimant had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> he would be markedly limited in the ability to understand, remember, and carry out complex job instructions. He would be moderately limited (defined as a moderate limitation but still able to function in this area) in the ability to use judgment; function independently; maintain attention/concentration; understand, remember, and carry out detailed job instructions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(Tr. at 24, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr.

5

at 28, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an assembler and a cleaner at the unskilled, medium level of exertion; and jobs such as a kitchen worker and laundry worker at the unskilled, light level of exertion. (Tr. at 29-30, Finding No. 9.) On this basis, benefits were denied. (Tr. at 30, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 8, 1992, and was 19 years old at the time of the administrative hearing, June 28, 2012. (Tr. at 28, 42.) Claimant had an eleventh grade, or limited, education and was able to communicate in English. (Tr. at 28, 43.) Claimant did not have any past relevant work.

(Tr. at 28, 43.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

Lisa Tate, M.A. - Psychological Evaluation:

On January 25, 2011, Ms. Tate conducted a psychological evaluation for complaints of attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder, and bipolar disorder. (Tr. at 878-86.) Respecting his ADHD, Claimant reported that he was happy and that he did "stuff" with his hands. (Tr. at 879.) Regarding his bipolar disorder, Claimant reported that he argued frequently with his father and became angered frequently when playing video games. (Id.) Ms. Tate noted that Claimant was undergoing treatment with Behavioral Medicine at CAMC, where he had treated for several years, but that he had not been seen for three months because he refused to take his medication. (Tr. at 880.)

On mental status examination, Ms. Tate observed that Claimant was alert and oriented, had a euthymic mood and broad and reactive affect, exhibited logical and coherent thought processes, denied delusions or compulsive behaviors and suicidal or homicidal ideation, had poor insight, but had normal judgment, memory, concentration, and psychomotor behavior. (Tr. at 880-81.) Claimant's father reported that Claimant was expelled from school the previous year for taking a pocket knife to school and was receiving home bound instruction. (Tr. at 881.)

On psychological testing, Claimant received a verbal IQ of 72 and a full scale IQ of 74. (Tr. at 881-82.) Ms. Tate concluded that the test results were valid, noting that Claimant was cooperative and friendly, easily established and maintained rapport, recalled and understood directions,

maintained a consistent level of effort during testing, exhibited normal motor behavior, was relaxed and comfortable, and was persistent and required little encouragement. (Tr. at 882.) Results of the WRAT-4 indicated that Claimant performed reading at the ninth grade level, spelling at the seventh grade level, and math at the fifth grade level. (Id.) Ms. Tate diagnosed ADHD NOS and oppositional defiant disorder. (Id.) She noted that Claimant's activities included playing video games, watching television, spending time with friends two to three times a week, running errands with his father as needed, helping to clean the house, and riding his bike in the summer. (Tr. at 883.) Ms. Tate opined that Claimant's social functioning was mildly deficient, but that his ability to maintain concentration, persistence, and pace was within normal limits. (Id.)

Jeff Harlow, Ph.D. - Psychiatric Review Technique:

On February 8, 2011, Dr. Harlow, a state agency psychologist, completed a form Psychiatric Review Technique, on which he opined that Claimant's ADHD and oppositional defiant disorder were non-severe impairments that failed to result in any restrictions of activities of daily living and maintaining concentration, persistence, or pace; mild difficulties in maintaining social functioning; and no episodes of decompensation of extended duration. (Tr. at 887-901.) Dr. Harlow opined that Claimant's mental impairments were not severe "because KEY-Functional Capacities are indicated to be within normal limits or mildly deficient by results of the consultative evaluation." (Tr. at 899.)

Charleston Area Medical Center ("CAMC"):

On March 25, 2011, Claimant presented to the emergency room at CAMC complaining that he could not feel his heartbeat. (Tr. at 923-24.) He reported that he had been playing his Playstation with his friends when he felt his heart race and then he could not feel his heartbeat. (Tr. at 923.) He initially had pain in his chest, which resolved. (Id.) Physical exam was unremarkable and on

neurological exam, it was noted that he was alert and oriented with an appropriate affect. (Tr. at 923-24.) He was diagnosed with acute anxiety and discharged home in stable condition and prescribed Vistaril 25mg. (Tr. at 924.)

Rosemary L. Smith, Psy.D. - Psychiatric Review Technique:

On June 17, 2011, Dr. Smith, a state agency psychologist, completed a form Psychiatric Review Technique, on which she opined that Claimant's ADHD and oppositional defiant disorder were non-severe impairments that resulted in mild restriction of activities of daily living, social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 931-44.) Dr. Smith noted that there "is no evidence of significant functional limitations due to a mental impairment." (Tr. at 943.)

Tony R. Goudy, Ph.D. - Psychological Evaluation:

On June 20, 2012, Dr. Goudy conducted a psychological evaluation to determine if psychological factors could have been affecting his ability to pursue substantial gainful activity. (Tr. at 999-1008.) Claimant reported that he was suffering from depression and bipolar disorder and had a history of ADHD and learning problems. (Tr. at 999.) Regarding his depression, Claimant reported symptoms of anhedonia, lack of energy, feelings of guilt and worthlessness, great difficulty concentrating. (Id.) He also reported forgetfulness, lack of concentration, irritability, and past suicidal thoughts. (Tr. at 1000.) On inquiry, Claimant denied symptoms associated with manic, hypomanic, or mixed episode bipolar disorder. (Id.) Dr. Goudy noted that Claimant was not then prescribed any medication to help him with his psychological problems. (Tr. at 1001.) He also noted that Claimant had received past treatment, but was not then receiving treatment. (Id.) He further noted that Claimant had never been hospitalized psychiatrically. (Id.)

On mental status examination, Dr. Goudy observed that Claimant's hygiene and personal

9

care appeared fair, that although he was somewhat reserved he tried to cooperate, and that he described his mood as normal, between happy and sad. (Tr. at 1002.) Claimant exhibited relevant, spontaneous, and coherent speech; he admitted to suicidal ideation but denied intent; he reported having heard someone whisper his name in the past and indicated that he once saw a ghost but had not heard or seen these things again; was well-oriented; had intact immediate memory, but moderately deficient recent and remote memory; had moderately impaired concentration; was of borderline intellectual functioning; had moderately impaired judgment; and was unable to provide any insight into his current psychological difficulties. (Tr. at 1002-03.) Dr. Goudy assessed depressive disorder NOS, ADHD NOS, and assessed a GAF of 60.[2] (Tr. at 1004.) He assessed mild difficulties in activities of daily living; mild to moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration persistence, or pace; and no episodes of decompensation of extended duration. (Id.) He opined that Claimant did not meet a listing level impairment. (Id.)

Dr. Goudy also completed a form Mental Assessment of Ability to Do Work-Related Activities, on which he opined that Claimant was markedly[3] limited in his ability to understand, remember, and carry out complex job instructions. (Tr. at 1006-08.) He further opined that Claimant

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

[3] Marked was defined as "serious limitation in this area. The ability to function is severely limited. Marked is defined as 20-50 percent of the workday would be affected to the point of non-productivity." (Tr. at 1006.)

was moderately[4] limited in his ability to use judgment; function independently; maintain attention/concentration; understand, remember, and carry out detailed, but not complex job instructions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Id.) Dr. Goudy assessed slight limitations in all other functional areas. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider the impact of his mental impairments on his functional ability as required by SSR 96-8p in assessing his RFC. (Document No. 10 at 10-11.) Claimant asserts that the ALJ's mental limitations are vague and do not articulate his "ability to perform sustained mental activities in a work setting on a regular and continuing basis." (Id. at 11.) He therefore contends that the ALJ's RFC assessment is not supported by substantial evidence. (Id.) In response, the Commissioner asserts that contrary to Claimant's argument, the ALJ's RFC assessment was very specific and included seven different mental-related limitations based upon Dr. Goudy's assessment and the definition of "moderate" as stated by medical expert, Dr. Tesner were appropriate. (Document No. 13 at 9-10.) The Commissioner notes that the ALJ gave Claimant the benefit of the doubt at step two, noting that the record demonstrated that Claimant had planned to work at a video game store where his application was accepted. (Id. at 9.) Furthermore, Claimant admitted at the hearing that he had matured since leaving school and was not the way he used to be. (Id.) Additionally, the Commissioner notes that Claimant neither had a mental health provider nor

---

[4] Moderate was defined as "moderate limitation in this area" and "up to 20 percent of the workday would be affected to the point of non-productivity." (Tr. at 1006.)

received treatment during the relevant period. (Id. at 10.) The Commissioner finally notes that the ALJ followed the regulatory procedure in assessing Claimant's RFC, which is supported by the substantial evidence of record. (Id.)

In reply, Claimant alleges that the ALJ failed to translate the terms "moderate" and "marked" in his hypothetical questions to the VE and stated definitions different than those used by Dr. Goudy. (Document No. 14 at 2-3.) Accordingly, Claimant asserts that the ALJ's controlling hypothetical question did not include specific function-by-function limitations, which made the VE's testimony unreliable and negated the basis to support the denial of benefits. (Id. at 3.)

Analysis.

Claimant alleges that the ALJ failed to consider the impact of his mental impairments on his functional ability in assessing his RFC. (Document No. 10 at 10-11.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater,

94 F.3d 413, 418 (8th Cir. 1996).

In his decision, the ALJ found that Claimant was (1) markedly limited in the ability to understand, remember, and carry out complex job instructions; (2) moderately limited (moderate but satisfactory) in the ability to use judgment; function independently; maintain attention/concentration; understand, remember, and carry out detailed job instructions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 24.)

In reaching this conclusion, the ALJ relied primarily on the testimony of the medical expert, Dr. Tesner, the opinion of Dr. Goudy, and Claimant's and his father's testimony. (Tr. at 24-28.) Dr. Tesner testified that Claimant's diagnoses included depressive disorder NOS and borderline intellectual functioning. (Tr. at 26-27, 60.) He indicated that the diagnoses of ADHD and oppositional defiant disorder were childhood diagnoses that no longer were relevant. (Id.) Claimant no longer required medication and even stated that he did not need it. (Tr. at 25-27.) His ability to concentrate was sufficient such that he could play his video games and he indicated that he almost had his favorite racing game beat. (Tr. at 26, 62.) The ALJ noted that Claimant was not undergoing any treatment and was not taking any prescribed medications. (Tr. at 27.) He further noted Claimant's extensive activities of daily living, which included living by himself in an apartment, cooking and cleaning, doing laundry, sweeping, managing his personal care, shopping and eating out, handling his finances, exercising, seeing his girlfriend, riding bikes, watching movies, playing video games, and reading books. (Tr. at 27, 123-34.) The ALJ assessed mild difficulties in activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace, which was consistent with Dr. Goudy's assessment; and no episodes of decompensation of extended duration. (Tr. at 23.)

The ALJ also noted the medical evidence, including Dr. Goudy's psychological evaluation. Dr. Goudy assessed one marked limitation and five moderate limitations, which were adopted by the ALJ. At the hearing, the ALJ asked the VE to consider Dr. Goudy's moderate limitations to mean "moderately limited but ultimately still satisfactorily."(Tr. at 63.) The VE understood the definition and responded that jobs were available. The VE indicated that had he used the definition of moderate as defined on Dr. Goudy's form, to mean moderate limitation "up to 20 percent of the workday," then no jobs would be available, using all of Dr. Goudy's assessed limitations. Dr. Tesner, the medical expert agreed with the ALJ's assessment of Dr. Goudy's limitations. The undersigned notes that although Dr. Goudy assessed moderate limitations, he assessed a GAF of 60, which was borderline indicative of only mild symptoms. Thus, the moderate limitations must have fallen on the lower end of the spectrum in that the limitation was up to 20 percent of the workday.

The ALJ further noted that the state agency opinions of Drs. Harlow and Smith even failed to indicate any severe mental impairment. (Tr. at 27-28.) The ALJ rejected these opinions because he found that Claimant did have severe mental impairments. (Id.) The ALJ also acknowledged the testimony of Claimant and his father. (Tr. at 24-25.) Claimant testified that he applied for a job at Game Stop, but they were not hiring. (Tr. at 24, 46.) Claimant stated that he had matured and was not like the person he was in school. (Id.) Accordingly, in view of the foregoing, the undersigned finds that the ALJ properly considered the impact of Claimant's mental impairments on his functional ability in assessing his RFC and that the ALJ's RFC assessment is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's

14

Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 27, 2015.

*R. Clarke VanDervort* (signature)

R. Clarke VanDervort
United States Magistrate Judge