```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**DANIEL ALEXANDER MOLLETT,**

      Plaintiff,

v.                                        Civil Action No. 2:13-28018

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

On November 5, 2013, this action was instituted seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C.A. § 405(g).  The sole issue before the court is whether the decision denying a claim for supplemental income is supported by substantial evidence.  See 45 U.S.C.A. § 405(g).

By standing order this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge.  On February 27, 2015, the magistrate judge filed his Proposed Findings and Recommendation ("PF&R").  In the PF&R, the magistrate judge recommends that the Commissioner's final decision be affirmed and this matter dismissed from the docket.

After the court granted in part his request for an extension of time within which to object to the PF&R, plaintiff filed his objections on March 23, 2015. He challenges the magistrate judge's determination that the administrative law judge ("ALJ") (1) properly assessed his residual functional capacity ("RFC"), and (2) correctly formulated the controlling hypothetical question. Both the ALJ and the magistrate judge have thoroughly developed the record. The following is a brief summary of the claimant's personal history.

Mr. Mollett is a 22 year-old young man who previously received Supplemental Security Income benefits due to a childhood disability. Though he completed the eleventh grade, he functioned at the borderline intellectual level and suffered from depression disorder, NOS. His activities include playing video games, watching television, spending time with friends two to three times a week, running errands with his father as needed, helping to clean the house, and riding his bike in the summer. After turning 18, he was reevaluated and it was determined that he was no longer disabled.

As noted, Mr. Mollett first asserts that the ALJ failed to undertake a "function-by-function" analysis of his

limitations before making his RFC determination, as required by Social Security Ruling 96-8p (the "Ruling"), 61 Fed. Reg. 34,474 (July 2, 1996). In a very recent case -- decided after the ALJ reached his decision and after the PF&R was submitted -- our court of appeals addressed that topic. See Mascio v. Colvin, ---F.3d---, 2015 WL 1219530 (4th Cir. Mar. 18, 2015).

It observed, "Social Security Ruling 96-8p[] explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed [at 20 C.F.R. §§ 404.1545(b)-(d) and 416.945(b)-(d)]." Mascio, 2015 WL 1219530 at *2 (internal quotation marks and citations omitted). Those functions "include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, and pulling; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities such as seeing, hearing, and the ability to tolerate environmental factors." Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (citing 20 C.F.R. §§ 404.1545, 416.945).

According to the Ruling, it is only after that function-by-function analysis has been completed that RFC may "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 2015 WL 1219530, at *2 (quoting SSR 96-8p, 61 Fed. Reg. at 34, 475). And the Ruling "further explains that the residual functional capacity assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 2015 WL 1219530 at *2 (internal quotation marks and citations omitted).

But our court of appeals went on to explain that "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis . . . . is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at *3 (quoting Cichocki, 729 F.3d at 177). Instead, the court "agree[d] with the Second Circuit that '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's

4

analysis frustrate meaningful review.'" Id. (quoting Cichocki, 729 F.3d at 177.

Applying that standard, the court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions[.]" Id. at *4. In particular, the court observed that "the ALJ concluded that Mascio [could] perform certain functions [but] said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point, and also concluded that Mascio could lift only 20 pounds without explaining his rationale for rejecting a conflicting finding that Mascio could lift 50 pounds. Id. at *3.

The ALJ's decision in this case is much different than that of his colleague's in Mascio. In this case, unlike Mascio, the ALJ first discussed in broad terms the functional limitations suffered by Mr. Mollett:

> In activities of daily living, the claimant has mild restriction. The claimant testified that he takes care of his housework. The claimant reported cooking, sweeping, doing laundry, and taking care of his own personal needs . . . .
>
> In social functioning, the claimant has moderate difficulties. During evaluation by Ms. Tate, the

> claimant's social functioning was mildly deficient.
> The claimant reported having several friends while
> growing up.  He reported being in his current
> relationship [with his girlfriend] for one year . . .
> .
>
> With regard to concentration, persistence or pace, the
> claimant has moderate difficulties.  During mental
> status examination by Ms. Tate, the claimant's memory
> and concentration were within normal limits . . . .
> The claimant denied having any problems handling his
> own money.  During evaluation by Dr. Goudy, the
> claimant's recent memory, remote memory, and
> concentration were moderately impaired . . . .
>
> As for episodes of decompensation, the claimant has
> experienced no episodes of decompensation . . . which
> have been of extended duration.

(ALJ Decis. at 4).

The court is aware that this recitation of functional limitations appears at that point in the ALJ's decision where he performs the step 2 and step 3 analyses in the sequential evaluation process.  He there emphasizes his awareness, however, that further analysis of the functions is necessary at Step 4 and Step 5.  (ALJ Decis. at 5 ("The limitations identified . . . are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed

assessment by itemizing various functions contained in the broad categories" he uses at steps 2 and 3)).

One sees even in these broad categories of discussion that the ALJ has carefully analyzed the record evidence respecting the seriousness of the functional restrictions at steps 2 and 3.

When he arrives at step 4 and step 5, he notes specifically as follows:

> After careful consideration of the entire record, the undersigned finds that since March 1, 2011, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be markedly limited in the ability to understand, remember, and carry out complex job[] instructions. He would be moderately limited (defined as a moderate limitation but still able to function satisfactorily in this area) in the ability to use judgment; function independently; maintain attention/concentration; understand, remember, and carry out detailed job instructions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(ALJ Decis. at 5). The ALJ thereafter embarks upon a lengthy and thoughtful analysis supporting his function findings, with reference to both the evidence adduced at the administrative hearing and the opinions of various medical and psychological

7

experts, explaining whom he credits and why. (See generally ALJ Decis. at 5-9; see also PF&R at 13-14).  While it might be argued that he did not parse and compartmentalize the functional limitation discussion, a reviewer can readily ascertain the ALJ's thinking as it is evident in his discussion of the claimant's testimony and the other evidence of record.  Under these circumstances, nothing more is required.

Respecting formulation of the controlling hypothetical question, Mr. Mollett claims the ALJ failed to articulate any function-by-function limitations per se, instead simply referring the vocational expert to Dr. Goudy's residual functional capacity determination.  He also contends that the hypothetical question omitted the fact that Mr. Mollett would be precluded from working directly with the general public.

As our court of appeals has recently reiterated, "in order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all . . . evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006).  As noted by the magistrate judge,

8

> Dr. Goudy assessed one marked limitation and five moderate limitations, which were adopted by the ALJ. At the hearing, the ALJ asked the VE to consider Dr. Goudy's moderate limitations to mean "moderately limited but ultimately still satisfactorily."(Tr. at 63.) The VE understood the definition and responded that jobs were available.

(PF&R at 14). The magistrate judge is correct. Additionally, with respect to the question's omission of Mr. Mollett being precluded from working directly with the general public, the jobs identified by the vocational expert appear to take into account that limitation, namely, assembler, cleaner, kitchen worker and laundry worker.

The question withstands scrutiny. In sum, it adequately reflected Mr. Mollett's characteristics. See <u>Johnson v. Barnhart</u>, 434 F.3d 650, 659 (4th Cir. 2005) ("Having concluded that substantial evidence supports the ALJ's decision that Johnson suffers from no more than a slight emotional impairment, a slight impairment in gross and fine manipulation, and that any alleged drowsiness is not disabling, the hypothetical questions posed to the vocational expert adequately reflected Johnson's characteristics at the date she was last insured.").

Having considered the matter de novo, along with Mr. Mollett's objections, the court concludes that the ALJ's decision is supported by substantial evidence and the objections are not meritorious. For the reasons stated, the court ORDERS as follows:

1. That the PF&R be, and it hereby is, adopted and incorporated herein;

2. That the Commissioner's final decision be, and it hereby is, affirmed;

3. That judgment be, and it hereby is, granted in favor of the Commissioner; and

4. That this civil action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.

DATED: March 31, 2015

John T. Copenhaver, Jr.
United States District Judge